**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**AT LAW AND IN ADMIRALTY**

**CASE NO.:**

RAHN BAHIA MAR LLC d/b/a
BAHIA MAR YACHTING CENTER,
a Foreign, Limited Liability Company,

Plaintiff,

v.

M/V "WAKU", her boilers, engines, tackle, equipment, freight, appliances, apparel, appurtenances, furnishings, etc., *in rem*, and the United States of America, *in rem*,

Defendants.

_________________________________/

**VERIFIED COMPLAINT**

Plaintiff, RAHN BAHIA MAR LLC d/b/a BAHIA MAR YACHTING CENTER, (hereinafter referred to as "BAHIA MAR"), as and for its Complaint, *in rem,* pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims and Local Admiralty Rule C, in order to enforce a maritime lien, by and through the undersigned counsel, hereby sues the Defendant, M/V "WAKU", her boilers, engines, tackle, equipment, freight, appurtenances, furnishings, etc., *in rem*, and the United States of America (hereinafter referred to as "U.S.A."), *in rem*, and in support of the claim alleges as follows:

1. The Court has jurisdiction pursuant to 28 U.S.C. §1333 as this is a case cognizable within the Court's admiralty and maritime jurisdiction. This is an admiralty and maritime claim within the meaning of Rule 9(h) Fed.R.Civ.P.

2. At all times material hereto, Plaintiff, BAHIA MAR, was, and now is, a Delaware, Limited Liability Company, authorized to do business in the State of Florida, and is doing business, in the State of Florida, with a place of business in Broward County, Florida.

3. The Defendant M/V "WAKU" is a seagoing vessel of 143 feet in length, bearing IMO number 9548031, and is presently located at Bahia Mar Yachting Center, 801 Seabreeze Boulevard, Fort Lauderdale, Florida  33316, and which is within the jurisdiction of this Court.

4. The Defendant, U.S.A., may claim same right or interest in the M/V WAKU.  Said right or interest is subject, subordinate and inferior to the lien of the Plaintiff.

5. Plaintiff has hired the undersigned counsel and is obligated to pay a reasonable fee for said services.

6. All conditions precedent to the bringing of this action have been satisfied, performed, or waived.

7. Plaintiff owns and operates the Bahia Mar Yachting Center in Fort Lauderdale, Broward County, Florida.

8. On or before November 16, 2016, the Defendant vessel was brought in under its own power to the Marina and sought dockage.

9. Plaintiff berthed the vessel at its facilities and provided dockage to the Defendant vessel and Plaintiff thereafter provided services, supplies, equipment, labor, materials or other necessaries for the Defendant M/V "WAKU" at the request of the vessel's owner, captain or master.  The owner of the vessel, or its captain or master,

executed the Dock Space Lease and License Agreement ("Agreement") on or about November 16, 2016. Attached hereto as Exhibit "A" is a copy of the Agreement.

The balance for such dockage, necessaries, supplies, equipment, labor, and other services rendered to the Defendant vessel total $13,807.49 as of this date, exclusive of interest, attorneys' fees or other costs of litigation. Attached hereto as Exhibit "B" is Plaintiff's invoice for necessaries and dockage provided through February 28, 2017.

10. Plaintiff has given Defendant, M/V "WAKU", notice of its claims and has been diligent in its efforts to collect its claim, but the balance remains past due and owing.

11. Demand for payment has been made upon the Defendant vessel and its owner or captain or master for payment of the amount past due and owing.

12. After allowing all just credits to the Defendant, M/V "WAKU", there is still now past due and owing to the Plaintiff the sum of $10,119.99 plus interest on all amounts due and unpaid.

13. In failing to pay the Plaintiff for dockage, services, supplies, equipment, labor, materials, and other necessaries, the Defendant, M/V "WAKU", has breached the Agreement which its owner or captain or master executed with Plaintiff.

14. Plaintiff provided dockage and necessaries in the form of services, materials, and other necessaries to the Defendant, M/V "WAKU".

15. The Maritime Commercial Instruments and Liens Act define necessaries as "repairs, supplies, towage and the use of drydock or marine railway." 46 U.S.C. at §31301(4). Examples of necessaries include services and goods related to repairs, provisions for crew and passengers, wharfage or dockage, and other services or supplies provided to a vessel. 46 U.S.C. §31307.

16. Pursuant to 46 U.S.C. §31301-31343, Plaintiff is entitled to enforce its maritime lien against the vessel M/V "WAKU" for non-payment of dockage, repairs, equipment, supplies, labor and materials, and other services provided.

WHEREFORE, Plaintiff, BAHIA MAR, prays that:

a. The Court take jurisdiction of this claim.

b. The Court issue process *in rem* in accordance with the rules and practices of this court in causes of maritime and admiralty jurisdiction against the M/V "WAKU", her boilers, engines, tackle, equipment, freight, appliances, apparel, appurtenances, furniture, etc., citing all persons claiming any interest therein to appear and answer on oath all and singular the matters aforesaid or suffer the entry of default;

c. The Plaintiff, BAHIA MAR, be adjudged to have a valid maritime lien against the M/V "WAKU" for all amounts due and owing under the Agreement, including all amounts accrued after this date, plus interest, and attorneys' fees and costs, and that the Court foreclose the maritime lien.

d. That the Court determine and adjudge that the lien of the Plaintiff is superior and prior to the claims of the U.S.A. against the M/V WAKU.

e. That said M/V "WAKU" be arrested and sold to satisfy BAHIA MAR's lien claim in the principal amount of $13,807.49 plus other costs, charges and fees as demanded herein.

f. That Plaintiff, BAHIA MAR, be awarded all damages from the Defendant, M/V WAKU,in the matter to be determined at time of trial together with prejudgment interest, costs, attorneys' fees, general relief, and for such other and further relief that this Court deems just and proper under the laws of the United States, including administrative costs and charges of these proceedings.

   g. That the Court grant such other and further relief as may be just and proper.

Respectfully submitted,

LAW OFFICE OF STUART R. MICHELSON
Attorneys for Plaintiff
800 Southeast Third Avenue, Fourth Floor
Fort Lauderdale, FL 33316
Telephone: 954-463-6100
Facsimile: 954-463-5599
E-Mail: smichelson@smichelsonlaw.com

By: ______________________________

Stuart R. Michelson
Fla. Bar No.: 286982

RCI
BAHIAMAR

# DOCK SPACE LEASE AND LICENSE AGREEMENT

**TYPE:** ☒ ANNUAL ☐SEASONAL ☐SUMMER ☐MONTHLY
**SLIP ASSIGNMENT:** D-420

## APPLICATION

**VESSEL NAME:** Waku
Vessel Type: PWR ____ TRWLR/MTRSL ____ SAIL ____
**LENGTH:** 143 **BEAM:** 28 **DRAFT:** 7
CG DOC #: ____
FL #: ____

POWER REQUIREMENTS:
30 AMP __ 50 AMP __ 100 AMP 1 Leg X Other____

**OWNER NAME** Captain Joe Williams / C/O Eric Castillo
**ADDRESS:** 7000 Southwest 22nd Court
**CITY/STATE/ZIP:** Davie, FL 33317
**CONTACT PHONE #:** (954) 804-1035 Joe **CELL#:** ____
**E-MAIL ADDRESS:** ____
DRIVER'S LICENSE NO.: ____ STATE: ____
CREWED VESSEL, CAPTAIN: Joe Williams / Eric Castillo
PHONE: (954) 274-5575

Based on the below APPLICATION FEE, DOCKAGE & LICENSE CHARGES, AND DEPOSIT, and subject to the TERMS AND CONDITIONS, OWNER and VESSEL submit this APPLICATION for acceptance by MARINA and confirm that all the above information is correct. It is understood and agreed that if and when MARINA accepts this APPLICATION by signature of its authorized agent in the space provided below, OWNER and VESSEL will have entered a binding agreement with MARINA that is governed and controlled by the APPLICATION and TERMS AND CONDITIONS of this DOCK SPACE LEASE AND LICENSE AGREEMENT ("AGREEMENT").

## APPLICATION FEE, DOCKAGE & LICENSE CHARGES, AND DEPOSIT

| | | |
|---|---|---|
| **BEGINNING DATE:** November 16, 2016 | **ENDING DATE:** October 20, 2017 | **RATE / FT:** $3.00 |
| **RATE/MONTH:** $13,113.00 | **RATE/MONTH TAX:** 786.78 | **MONTHLY TOTAL:** 13,899.78 |
| **TOTAL DOCKAGE:** $143,397.00 | **TOTAL DOCKAGE TAX:** 8,603.82 | **DOCKAGE TOTAL:** 152,000.82 |
| **UTILITY CHARGE:** $0.15 / KWH | **SALES TAX:** 6% SALES TAX | **FIRST MONTH DUE DATE:** November 16, 2016 |

Vessel must depart Bahia Mar Marina 10/20/16 - 11/12/17 due to FLIBS.

If this vessel sells this contract may be broken. Must present Bill of Sale to Dockmaster. Bahia Mar will collect 30 (thirty) day penalty upon date of sale.
Electric and Incidental Charges are closed out to the credit card monthly.
Annual Contracts: Credit has been given for time away due to Fort Lauderdale Boat Show.

OWNER and VESSEL understand and agree that all payments made/tendered with this APPLICATION, as well as all amounts due or payable under this AGREEMENT, are final and non refundable.

CREDIT/DEBIT CARD: VISA ____ MC ____ AMEX __: CREDIT/DEBIT CARD #: ____
EXP. DATE: ____ SEC. CODE # ____ INITIALS: ____

If the person signing this APPLICATION is not the OWNER, such person warrants and represents his/her authority to obligate OWNER and VESSEL to the APPLICATION, and, TERMS AND CONDITIONS of this AGREEMENT, and by signing below, also agrees to be bound personally, jointly and severally, with OWNER and VESSEL under this AGREEMENT. Signature below also certifies lawful possession and control of VESSEL by OWNER/Captain/Agent.

APPLICATION and AGREEMENT may be executed in any number of counterparts and by (or on behalf of) the different Parties hereto on separate counterparts and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute but one and the same APPLICATION or AGREEMENT. Delivery of this signature page as a photocopy, facsimile or an electronic record containing the photocopy, facsimile or electronic signature of a Party or authorized agent thereof, shall be as effective, enforceable and valid as if a paper version of this Agreement were delivered to the receiving party containing an original written signature.

**OWNER ACKNOWLEDGES HAVING RECEIVED, READ AND UNDERSTOOD THE CONTENTS OF THIS APPLICATION AND AGREEMENT (INCLUDING THE APPLICATION FEE, DOCKAGE/LICENSE CHARGES AND DEPOSIT, AND TERMS AND CONDITIONS SECTIONS), AS WELL AS A COPY OF THE MARINA's CURRENT RULES AND REGULATIONS. OWNER's (AND AGENT's) ATTENTION IS ESPECIALLY DIRECTED TO THE "NOTICE TO VESSEL OWNER" AND "INSURANCE, RELEASE, INDEMNIFICATION AND ATTORNEYS' FEES" SUB-SECTIONS CONTAINED IN THE TERMS AND CONDITIONS.**

**Submitted** this ____ day of ____, 20__ **By:** ____
**OWNER & VESSEL/For OWNER & VESSEL**

## ACCEPTANCE

**Accepted** this ____ day of ____, 20__ **By:** ____
**For MARINA**[1]

EXHIBIT "A"

[1] **Bahia RCI LLC, as authorized signatory for Rahn Bahia Mar L.L.C.**

## TERMS AND CONDITIONS

This DOCK SPACE LEASE AND LICENSE AGREEMENT ("AGREEMENT") is made between Bahia Mar (whereby Miami Beach Marina Associates, Ltd. and RCI, Inc. both do business as Bahia Mar, and, RCI Marine, Inc. manages, operates and maintains the Bahia Mar for and on behalf of Miami Beach Marina Associates, Ltd.,)(hereinafter separately and collectively "MARINA"), as the First Party and, the preceding named Vessel (hereinafter "VESSEL") and its Owner (hereinafter "OWNER"), as the Second Parties.

By acceptance of the preceding APPLICATION, and in consideration of the total amounts due for the full term of this AGREEMENT (whether or not VESSEL is present at Marina for all or part of the term) and the mutual covenants contained herein, MARINA leases one dock space to OWNER and VESSEL, and licenses OWNER to use the Bahia Mar Marina (herein "Marina") and certain of its facilities. The total amounts due will be pro-rated per month, and the pro-rated amount for each month shall be paid by OWNER in advance, on or before the 1st day of each month. Deposit sums shall be held by MARINA on its own account during the term of this AGREEMENT in order to assure the full and faithful performance of this AGREEMENT by OWNER and VESSEL. Any deposit sums which are due OWNER as of the ENDING DATE of this AGREEMENT shall be returned to OWNER within fifteen (15) days, provided that MARINA may apply any sums which it holds to any balance remaining on OWNER's account.

OWNER, Captain or agent hereby authorizes MARINA to immediately charge against the account of the submitted credit/debit card, any and all MARINA charges incurred by OWNER or any other person connected with VESSEL, including OWNER's crew, contractors and guests, during the term of this AGREEMENT and any continuation thereof. In addition, if charges billed to OWNER are not paid in full by 5:00 p.m. on the 5th day of the month following delivery of a bill, OWNER hereby authorizes MARINA to charge the billed amounts plus "LATE FEES" against said credit/debit card account. OWNER, Captain or agent acknowledges having executed for, and delivered to, MARINA a credit/debit card slip in order to effect payments under this provision.

OWNER SHALL PAY MARINA $5.00 PER DAY ("LATE FEES") FROM THE 1ST DAY OF THE MONTH IF ALL CHARGES BILLED TO OWNER (INCLUDING CHARGES THAT ARE PREPAYMENTS) HAVE NOT BEEN PAID BY 5:00 P.M. ON THE 5TH DAY OF THAT MONTH. LATE FEES SHALL CONTINUE TO BE PAID BY OWNER UNTIL ALL CHARGES, INCLUDING THOSE BILLED AFTER LATE FEES ARE FIRST INCURRED, ARE PAID CURRENT.

MARINA may terminate OWNER's lease and license under this AGREEMENT, by written notice to OWNER, if:

(a) OWNER defaults in the timely payment of any amount due under this AGREEMENT;
(b) OWNER breaches any term or condition of this AGREEMENT;
(c) OWNER refuses or fails to follow or comply with any of the MARINA RULES AND REGULATIONS;
(d) MARINA determines, in the exercise of its sole and complete discretion, that a Marina dock or pier is or may be unsafe or unserviceable for any reason whatsoever; or,
(e) MARINA, at its will (for any reason or no reason), provides three (3) days notice to OWNER.

OWNER may terminate the lease and license under this AGREEMENT, by at least three (3) days written notice to MARINA, if:

(a) OWNER's notice is accompanied by full and complete payment of (1) all fees and charges due and past due, and, (2) all fees and charges on the remaining unused term of this AGREEMENT; or,
(b) OWNER's notice is accompanied by proof that OWNER sold VESSEL to a bona fide unrelated third party purchaser.

If OWNER defaults in the timely payment of any amount due under this AGREEMENT or if OWNER breaches any of the terms and conditions of this AGREEMENT, MARINA shall have all rights and remedies provided by this AGREEMENT and by applicable laws (now or hereafter existing), and in addition, may (at its sole and complete discretion and option) without notice of any kind, accelerate the entire amount to be paid by OWNER for the entire term contemplated by this AGREEMENT, and thereupon, the entire amount to be paid by OWNER for the entire term contemplated by this AGREEMENT shall at once be due and payable by OWNER to MARINA. All remedies provided for in this AGREEMENT, and by Florida and federal laws, are cumulative and non-exclusive.

It is agreed that VESSEL is also itself responsible to perform as set forth in this AGREEMENT, and further, responsible for performance of all OWNER's obligations and responsibilities under this AGREEMENT. Any and all sums due MARINA by OWNER (his/her/its agents and/or guests) under, arising out of or relating to this AGREEMENT, shall also be charges against VESSEL. In addition to all other remedies, MARINA may also proceed in accordance with Florida and/or federal laws to enforce any and all liens against VESSEL created or recognized by Florida and/or federal laws. Nothing in this AGREEMENT shall be construed as a waiver by MARINA of any lien rights created or recognized by Florida or federal laws. MARINA shall have the option to proceed against VESSEL, in rem, and, personally against the OWNER and/or signer hereof, or any combination thereof, for breach of this AGREEMENT, to enforce any and all liens, and to enforce any and all term(s) or condition(s) of this AGREEMENT

The term of this AGREEMENT shall be from the BEGINNING DATE to the ENDING DATE, and, OWNER's lease and license under this AGREEMENT shall terminate without notice on the ENDING DATE. However, in the event the term of this AGREEMENT expires and VESSEL remains at the Marina without the execution of a new agreement, OWNER hereby agrees that this AGREEMENT shall be considered as being in full force, except OWNER agrees that he/she/it shall pay MARINA the prevailing rates and other charges under its current standard fees and charges sheet, plus taxes.

At all times, OWNER retains exclusive care, custody and control of, and is solely responsible for, VESSEL, its engines, appurtenances and contents. MARINA is not a bailee of VESSEL, its engines, appurtenances or contents and assumes no responsibility for safe operating condition, tie up, dockage or maintenance of VESSEL. OWNER is solely responsible for security of VESSEL and for preventing entry of unauthorized persons on VESSEL.

OWNER, VESSEL and their contractors and guests shall comply with the MARINA RULES AND REGULATIONS, current copy attached, and any alteration, amendment or modification thereof. MARINA reserves the right to alter, amend, and modify these RULES AND REGULATIONS, at any time, by posting or by delivery of a notice.

This AGREEMENT is not assignable by OWNER; any attempt by OWNER to assign any rights arising under this AGREEMENT is void. MARINA may designate a dock other than the specific dock designated herein on notice to the OWNER, and, OWNER agrees to move VESSEL accordingly at OWNER's expense. **Initials:**

Exclusive venue for any action arising out of this AGREEMENT or any alleged breach hereof or in any way tangential to the relationship arising under this AGREEMENT shall be in a court of competent jurisdiction in Miami-Dade County, Florida.

## NOTICE TO VESSEL OWNER

MARINA hereby informs OWNER that in the event OWNER fails to remove the VESSEL from the Marina promptly (within eight (8) hours) after the issuance of a tropical storm or hurricane watch for Broward County, Florida, under Florida law, MARINA, its managers, operators, employees, or agents are authorized to remove the VESSEL, if reasonable, from its dock or take any and all other reasonable actions deemed appropriate by MARINA, its managers, operators, employees or agents in order to better secure the VESSEL and to protect Marina property, private property, and the environment. OWNER is further notified that he/she/it may be charged a reasonable fee for any such action.

Accordingly, in the event OWNER fails to promptly remove VESSEL from the Marina after a tropical storm or hurricane watch has been issued, MARINA (its managers, operators, employees, or agents) may remove VESSEL, if reasonable, from its dock or take whatever reasonable actions are deemed necessary to properly secure VESSEL to minimize damage to it and to protect Marina property, private property, and the environment and OWNER shall pay a reasonable fee for any such actions taken.

## INSURANCE, RELEASE, INDEMNIFICATION and ATTORNEYS' FEES

**MARINA DOES NOT CARRY INSURANCE** covering property of OWNER. **MARINA WILL NOT BE RESPONSIBLE** for any personal injury (including death) or property damage resulting, caused by or arising out of this lease, license or other use of the dock or other Marina facilities. **OWNER SHALL KEEP COMPLETE MARINE INSURANCE** on VESSEL and its operator(s) current and in place, including full insurance on hull and machinery and other property, and, insurance against OWNER's and VESSEL's liabilities to third parties.

**VESSEL AND OWNER HEREBY RELEASE AND DISCHARGE MARINA** (and officers, directors, managers, operators, agents, servants, employees and insurers thereof) from any and all liability for loss, personal injury (including death), or damage to person or property sustained while in the Marina, on the Marina property, and/or using any Marina facility, arising out of, relating to or caused (directly or indirectly) by: (1) any **negligence** of MARINA or officer(s), director(s), manager(s), operator(s), agent(s), servant(s) and/or employee(s) thereof; (2) performance or nonperformance by MARINA of the obligations imposed by this AGREEMENT; and/or (3) strict liability, breach of warranty or other fault (not rising to the level of gross negligence or intentional conduct) of MARINA; irrespective of whether said loss, personal injury (including death) or damage to person or property arises out of, relates to or is caused (directly or indirectly) by failure of MARINA's product, equipment or facilities, fire, theft, vandalism, water damage, collision, allision, windstorm, rain or other casualty.

**VESSEL AND OWNER SHALL INDEMNIFY AND HOLD HARMLESS MARINA** (and officers, directors, managers, operators, agents, servants, employees and insurers thereof) from and against each and every claim, suit, liability, loss, damage (including without limitation damage to Marina docks, pilings, and cleats, and, others' vessels), fee and expense (including without limitation attorneys' and paraprofessionals' fees), directly or indirectly arising out of, relating to or in connection with OWNER's or VESSEL's presence in the Marina or on Marina property, or use of any Marina facility; **it being expressly acknowledged and agreed that the indemnification and hold harmless obligations of OWNER and VESSEL under this Section shall apply** even if such claim, suit, loss, damage, fee or expense arises out of, relates to or is caused (directly or indirectly), in whole or in part, by: (1) **negligence** of MARINA or officer(s), director(s), manager(s), operator(s), agent(s), servant(s) and/or employee(s) thereof; (2) performance or nonperformance by MARINA of the obligations imposed by this AGREEMENT; and/or, (3) strict liability, breach of warranty or other fault (not rising to the level of gross negligence or intentional conduct) of MARINA.

**VESSEL AND OWNER, JOINTLY AND SEVERALLY, SHALL PAY** all costs and expenses, including reasonable **attorneys' and paraprofessionals' fees**, incurred by MARINA in seeking to enforce, through judicial proceedings or otherwise, any and all provisions of this AGREEMENT or to effect collection of any sums due MARINA.

The above DEFENSE, RELEASE, INDEMNIFICATION and ATTORNEYS' FEES Clauses shall survive termination of this AGREEMENT, and the lease and license hereunder.

* * *

If any provision contained in this AGREEMENT shall be held to be invalid, illegal, or unenforceable in any respect, this shall not affect any other provision, and this AGREEMENT shall be construed as if such provision had never been contained in this AGREEMENT. This AGREEMENT is the entire AGREEMENT between the parties and supersedes all prior agreements. No changes to this AGREEMENT are valid unless in writing and signed by both parties. MARINA's failure to require strict performance of this AGREEMENT, or MARINA's waiver of any condition, shall not be deemed a future waiver of any condition or of any of MARINA's rights under this AGREEMENT.

Any notice to OWNER called for by this AGREEMENT is effective upon delivery at either the address specified in the APPLICATION or to the VESSEL. Any notice to MARINA called for by this AGREEMENT is effective upon delivery to a MARINA person in the dock master's office during open hours. **Initials:**

## MARINA RULES AND REGULATIONS

In an effort to provide an inviting atmosphere for all using the Marina, the following Rules and Regulations are implemented by Bahia Mar ("MARINA") for your protection and the protection of others. Your compliance with these Rules and Regulations is required under your DOCK SPACE LEASE AND LICENSE AGREEMENT.

1. NO WAKE within or approaching the Marina.
2. Only vessels in good condition, and under their own power, shall be admitted to the Marina areas.
3. In the event of an emergency during OWNER's absence, e.g., breakdown of bilge pump, leaks, bad lines, MARINA is authorized to make or order necessary repairs, at reasonable charges, which will be charged to and paid/reimbursed by OWNER.
4. OWNERs are reminded that they (and their VESSELs) are bound by the DOCK SPACE LEASE AND LICENSE AGREEMENTS, and among other things, thereunder agree to pay and be otherwise responsible for any injury or damage to persons or property, including MARINA personnel or property, arising in connection with the presence of OWNER or VESSEL in the Marina or on Marina Property. As such, OWNERs should study and be vigilant to at all times comply with the provisions of their DOCK SPACE LEASE AND LICENSE AGREEMENTS.
5. Disorder, indecorous conduct, or other conduct by OWNER, crew, contractors or guests, that might injure a person, cause damage to property or harm the reputation of MARINA are prohibited. Pets must be leashed within the confines of the Marina and may be toileted only on grass areas. Pets are permitted only if they do not disturb others.
6. Fires (charcoal, gas or otherwise) are not permitted on the piers or docks.
7. Noise shall be kept to a minimum at all times. OWNERs, crews, contractors and guests shall use discretion in operating engines, generators, radios, and television sets, etc., so as not to create a nuisance or disturbance. The use of mechanical tools (buffers, sanders, etc.) outside of the VESSEL is prohibited. All VESSELs must have underwater exhaust in operation.
8. Painting, scraping, or repairing of gear of VESSEL shall not be permitted on the walkways, docks, and piers. The extent of repairs and maintenance permitted shall be at the sole discretion of the MARINA.
9. VESSELs leaving for an extended absence (3 days or more) must so notify the dock master's office. MARINA reserves the right to lease any slip when vacant, and it is expected that transients will move for vessels on seasonal contracts or on advance reservations. OWNER acknowledges dock space assignment is temporary and may be reassigned by MARINA for any reason MARINA deems valid and reasonable. Subleasing of dock spaces, transfer of VESSELs between dock spaces, or from one dock space to another, shall not be allowed, except upon prior written approval of MARINA. OWNER authorizes that in case of an emergency, or if the VESSEL is not moved in accordance with the prior notice from MARINA, MARINA may move the VESSEL from a particular dock space to any other place. Vessels may be moved to another dock space to make room for special events at Marina, and MARINA will make reasonable efforts to provide 30 days notice.
10. The Rules of the Road and Navigational Laws of the United States apply to all vessels within, entering or leaving the Marina.
11. Refuse shall not be thrown overboard. Garbage shall be deposited only in cans (garbins) or other receptacles provided for that purpose. OWNERs shall notify MARINA of anything that will not fit in these cans and MARINA will dispose of same. No person shall discharge sanitation effluent, oil, fuel, spirits, flammable substances, or oily bilge liquids into or near the Marina. If VESSEL has a sanitation device, OWNER must comply with the most advanced state-of-the-art requirements of the Coast Guard governing its manufacture, installation and use. Every sanitation device must be properly functioning at all times while VESSEL is in the Marina.
12. VESSEL shall not be used for commercial or business purposes and advertising or soliciting shall not be permitted on any VESSEL within the Marina. No VESSEL or OWNER may use the Marina, its name, address, or phone number, for commercial or business purposes. No "for sale" or "for hire" signs may be put on any VESSEL. Commercial vessels in the commercial zone with written authority from MARINA are excepted.
13. Swimming, diving, and fishing are prohibited in the Marina.
14. OWNERs shall not store supplies, materials, accessories, or debris on walkways, docks, or piers and shall not construct or place thereon any lockers, chests, cabinets, or similar structures, except upon written approval from MARINA. Laundry shall not be hung on VESSELs, walkways, docks, or piers in the Marina.
15. License/Lease day starts at 6:00 a.m. Any VESSEL using Marina prior to 6:00 a.m. will be charged for the previous day. Check out time shall be 12:00, noon. Any VESSEL present in Marina after 12:00 noon will be charged for the following day.
16. An OWNER or VESSEL checking out of Marina shall report to the dock master's office and settle accounts prior to leaving. It is suggested that all OWNERs leave a forwarding address in order to permit prompt handling in the event a telephone call or mail is received for them. However, in any event, MARINA assumes no responsibility whatsoever for forwarding mail or messages. All personal property must be removed from Marina when the Dock Space Lease and License are terminated. MARINA assumes no responsibility for any personal property that may be remaining. OWNERs and Captains please remember that under the DOCK SPACE LEASE & LICENSE AGREEMENT, MARINA is entitled to immediately charge against the account of the submitted credit/debit card, any and all MARINA charges incurred by OWNER or any other person connected with VESSEL, including OWNER's crew, contractors and guests.
17. MARINA governs and limits Marina parking spaces. No person(s) may ride any automobile, motorcycle, bicycle, skateboard, or roller blades on any docks or piers and they must be stored on the VESSEL or in the parking lot.
18. Dinghies must be secured afloat within the assigned Dock Space and shall not interfere with adjoining dock spaces.
19. All charter operators, contractors and outside workers operating or working in the Marina must have liability insurance, and all licenses, permits and certificates required by all governing agencies, current and in full force. Insurance certificates must be presented to MARINA. Charter operators shall have coverage for at least $1,000,000.00 single limit and limits for others will be set by MARINA.
20. Employees of MARINA may not be hired to perform work of any sort at the Marina for or on behalf of any OWNER, VESSEL, patron, crewmember, guest or other person.
21. Unauthorized use of Marina-supplied fresh water is prohibited.

Initials: JW

RCI BAHIAMAR

SEND PAYMENT TO
ATTN: Charles Walker
801 Seabreeze Blvd
Fort Lauderdale, FL 33316
Phone 954 627-6309 Mobile 954-294-4296
cwalker@rcibahiamar.com

DATE: February 28, 2017
RESERVATION #: 20199
ARRIVAL DATE: November 16, 2016
DEPARTURE DATE: October 20, 2017
SLIP ASSIGNMENT: D-420
LENGTH: 43m = 141feet
RATE PER FOOT: $ 3.00

BOAT NAME: Waku 43
OWNER NAME: Captain Joe Williams / Eric Castillo
BILLING ADDRESS: 7000 Southwest 22nd Court #144
CITY/STATE/ZIP: Davie, FL 33317
EMAIL ADDRESS: CaptJoe@YachtWaku.com

| START DATE | END DATE | DESCRIPTION | QUANTITY | RATE | SALES TAX | PAYMENT | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|---|
| January 1, 2017 | January 31, 2017 | Balance Forward | 1 | 265.00 | | | 265.00 | 265.00 |
| January 1, 2017 | January 31, 2017 | Metered Electricity | 1 | 2,018.50 | | | 2,018.50 | 2,283.50 |
| February 1, 2017 | February 28, 2017 | Doackage | 28 | 423.00 | 25.38 | | 12,554.64 | 14,838.14 |
| February 1, 2017 | February 28, 2017 | Tender Dockage | 1 | 250.00 | 15.00 | - | 265.00 | 15,103.14 |
| February 7, 2017 | | PAYMENT | 1 | | | 5,000.00 | - | 10,103.14 |
| February 10, 2017 | | Fuel | 1 | 16.85 | | | 16.85 | 10,119.99 |
| February 1, 2017 | February 28, 2017 | Metered Electricity | 1 | 3,687.50 | | | 3,687.50 | 13,807.49 |
| | | | | | | | **BALANCE** | $ **13,807.49** |

EXHIBIT "B"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**AT LAW AND IN ADMIRALTY**

**CASE NO.:**

RAHN BAHIA MAR LLC d/b/a
BAHIA MAR YACHTING CENTER,
a Foreign, Limited Liability Company,

Plaintiff,

v.

M/V "WAKU", her boilers, engines, tackle, equipment, freight, appliances, apparel, appurtenances, furnishings, etc., *in rem*, and the United States of America, *in rem*,

Defendants.

_______________________________/

## VERIFICATION

**BEFORE ME**, the undersigned authority, personally appeared: John R. Hopwood, Jr., General Manager for Rahn Bahia Mar LLC d/b/a Bahia Mar Yachting Center., who, AFTER BEING DULY SWORN, did depose and stated that he has read in its entirety the foregoing Complaint and based upon his personal knowledge, the allegations contained therein are true and correct.

_______________________________
John R. Hopwood, Jr., General Manager for Rahn Bahia Mar LLC, d/b/a Bahia Mar Yachting Center

**SUBSCRIBED AND SWORN** to before me in the city of Fort Lauderdale, County of Broward, State of Florida, to take acknowledgements, personally appeared John R. Hopwood, Jr., General Manager for Rahn Bahia Mar LLC d/b/a Bahia Mar Yachting Center who is personally known to me and who did take an oath and who executed the

foregoing instrument and he/she acknowledged before me that he has executed the same.

**WITNESS** my hand and official seal in the County and State last aforesaid this 1st day of March, 2017.

PAMELA PENGE
MY COMMISSION # FF957132
EXPIRES: February 03, 2020

Pamela Penge

Print Name: Pamela Penge
Notary Public, State of Florida
My Commission Expires 2/3/20
Commission Number 957132

Respectfully submitted this 1 day of March, 2017.

Stuart R. Michelson, Esq.
Florida Bar Number: 286982
LAW OFFICE OF STUART R. MICHELSON
Attorney for Plaintiff
800 S.E. Third Avenue, Fourth Floor
Fort Lauderdale, Florida 33316
Telephone: (954) 463-6100
Facsimile: (954) 463-5599