UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case Number: 17-60447-CIV-MARTINEZ-GOODMAN
Case Number: 17-60449-CIV-MARTINEZ-GOODMAN

------------------------------------------------- x
RAHN BAHIA MAR LLC d/b/a             :
BAHIA MAR YACHTING CENTER,           :
A Foreign, Limited Liability Company, :
                                      :
                         Plaintiff,   :
    v.                                :
                                      :
M/V "WAKU", her boilers, engines,    :
tackle, equipment, freight, appliances, :
apparel, appurtenances, furnishings, etc., :
*in rem*, and the United States of America, :
                                      :
                        Defendants.   :
                                      :
------------------------------------------------- x

**MOTION IN ACCORDANCE WITH SUPPLEMENTAL RULE E(4)(f) AND LOCAL ADMIRALTY RULE C(7) FOR AN ORDER DIRECTING PLAINTIFF TO SHOW CAUSE WHY THE ARREST OF THE TWO VESSELS EACH NAMED THE M/V WAKU SHOULD NOT BE VACATED AND SUPPORTING MEMORANDUM OF LAW**

EPBC Holdings Ltd. and Nautical Corp., each a claimant of a vessel named the M/V Waku ("**Claimants**") ("**Vessels**")[1] pursuant to Supplemental Rule E(4)(f) and Local Admiralty Rule C(6), and making a restricted appearance in accordance with Supplemental Rule E(8), each move, in accordance with Supplemental Rule E(4)(f) and Local Admiralty Rule C(7), for an

---

[1] The first M/V WAKU, 143 feet long, IMO No. 9548031, is the subject of the complaint in Case No.: 17-60447-CIV-Martinez-Goodman, which plaintiff has arrested under Supplemental Rule C(1), allegedly to enforce a maritime lien for dockage services in the sum of $13,807.49, pursuant to the writ of arrest issued by the Court on 7 March 2017. The second M/V WAKU, 208 feet long, IMO No. 9695262, is the subject of the amended complaint in Case No.: 17-60449-CIV-Martinez-Goodman, which plaintiff has also arrested under Supplemental Rule C(1), allegedly to enforce a maritime lien for dockage services in the sum of $40,492, pursuant to the writ of arrest issued by the Court on 9 March 2017.

Order directing plaintiff Rahn Bahia Mar LLC ("**Bahia Mar**") to show cause why the arrests of the two vessels:

M/V WAKU, 143 feet long, IMO No. 9548031, Cayman Registration No. 741370; and

M/V WAKU, 208 feet long, IMO No. 9695262, Cayman Registration No. 747107

should not be vacated and the Court should not award all attorney's fees, costs and expenses incurred by Claimants owing to the arrests. The arrests must be vacated because they are null and void in accordance with the Foreign Narcotics Kingpin Designation Act, 22 U.S.C. § 1902, and the Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. 598.101 *et seq.*, as further explained below.[2]

**Factual Background**

EPBC Holdings Ltd. and Nautical Corp. are each a claimant of separate vessels named the M/V WAKU pursuant to Supplemental Rule E(4)(f) and Local Admiralty Rule C(6) ("**Claimants**"), and each company is ultimately owned by Mr. Samark Lopez, a citizen of Venezuela.

Both Vessels are highly valuable ocean-going yachts. They have been moored during the winter season at Bahia Mar's marina in Fort Lauderdale. For no apparent good reason Bahia Mar has arrested the Vessels under Supplemental Rule C(1) and Local Admiralty Rule C(2)(a), allegedly to enforce maritime liens for the relatively small dockage charges noted above in footnote 1. Bahia Mar has also been appointed, on its application, the custodian of the Vessels at Bahia Mar's marina. What is worse, Bahia Mar has arrested the Vessels—and purposefully maintained the arrests—in knowing violation of the Foreign Narcotics Kingpin Designation Act

---

[2] Claimants also submit in support of their motion the declaration of Mr. Eric Castillo, the Yacht Manager of the two Vessels, who provides further details concerning the Vessels and explains, among other things, the risks resulting from the arrests and the appointment of Bahia Mar as the custodian of the Vessels that render the need to vacate the arrests all the more urgent.

("**Kingpin Act**"), 22 U.S.C. § 1901 *et seq.*, and the Foreign Narcotics Kingpin Sanctions Regulations ("**Regulations**"), 31 C.F.R. 598.101 *et seq.*, which (a) preclude Bahia Mar from seeking to arrest the Vessels to enforce its alleged liens and (b) render the arrests null and void.[3]

### The Kingpin Act

The Kingpin Act implements the policy of the United States to apply economic and other financial sanctions to those believed to be significant foreign narcotics traffickers and their organizations worldwide to protect the national security, foreign policy and economy of the United States from the threats they pose. 22 U.S.C. § 1901(b). The Kingpin Act is a blocking statute that, among other things, blocks all property and interests in property within the United States, or within the possession or control of any United States person, that are owned or controlled by any foreign person whom the Secretary of the Treasury designates as materially assisting in the trafficking activities of, or acting for or on behalf of, a significant foreign narcotics trafficker. 22 U.S.C. § 1904(b)(2).

The Kingpin Act prohibits any transaction or dealing by a United States person, or within the United States, in property or interests in property of any allegedly significant narcotics trafficker identified by the President or of foreign persons designated by the Secretary of the Treasury pursuant to the Kingpin Act. 22 U.S.C. § 1904(c)(1).

And the Kingpin Act authorizes the Secretary of the Treasury to promulgate the Regulations that, among other things, "block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent, or prohibit any acquisition, holding, withholding, use, transfer, withdrawal, transportation, placement into foreign or domestic commerce of, or dealing

---

[3] Mr. Lopez's property interest in the Vessels for purposes of the Kingpin Act and the Regulations is identified in the Report on Blocked Property that Mr. Castillo, on 28 February 2017, submitted to the Sanctions, Compliance and Evaluation Office of the Office of Foreign Assets Control ("**OFAC**"), part of the Department of the Treasury. Attached as Exhibits 1 and 2 to Mr. Castillo's declaration are the Schedules to the Blocking Report (D-1 and D-9) submitted to OFAC for each Vessel.

in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest." 22 U.S.C. § 1905(a)(2).

## The Regulations

The Regulations extend the blocking provisions of the Kingpin Act to any "specially designated narcotics trafficker" ("**SDNT**") designated by the Secretary of the Treasury. 31 C.F.R. §§ 598.201 and 598.314. The Regulations block the "property" and "interests in property" within the United States, or within the possession or control of any United States person, of any SDNT (31 C.F.R. § 598.202) and prohibit any transaction or dealing in property or interests in property of an SDNT (31 C.F.R. § 598.203(a)). The Regulations also render "null and void" any "transfer" after the "effective date" that is in violation of any provision of the Regulations or of any order, directive, ruling, instruction or license issued pursuant to the Regulations, and that involves any property or interest in property of an SDNT, and any such transfer "shall not be the basis for the assertion or recognition of any interest in or right, remedy, power or privilege with respect to such property or property interests." 31 C.F.R. § 598.205(a).

The Regulations define the terms "property" and "property interest" expansively. 31 C.F.R. § 598.312. The non-exclusive terms include, among many things, "goods, *** chattels, *** *ships, goods on ships*" and "any other property, real, personal or mixed, tangible or intangible, or interest or interest therein, whether present, future or contingent." 31 C.F.R. § 598.312. The Regulations further provide that the term "interest" when used with respect to "property," as in, for example, "an interest in property," means "an interest of any nature whatsoever, direct or indirect." 31 C.F.R. § 598.307.

4

The term "transfer" is defined expansively to mean "any actual or purported act or transaction, *** the purpose, intent or effect of which is to create, surrender, release, convey, transfer or alter, directly or indirectly, any right, remedy, power, privilege or interest with respect to any property." 31 C.F.R. § 598.316. The non-limiting examples of prohibited transfers include, among many things, "the creation or transfer of any lien," the "issuance, docketing, filing or levy of or under any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order," and "the service of any garnishment." 31 C.F.R. § 598.316.

The term "effective date" is defined as referring to the effective date of the applicable prohibitions and directives of the Regulations, "which is December 3, 1999, or, in the case of specially designated narcotics traffickers designated after that date, the earlier of the date on which actual or constructive notice of such designation is received." 31 C.F.R. § 598.302.

The Regulations furthermore provide that:

> *Unless licensed or authorized pursuant to this part, any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property in which on or since the effective date there existed an interest of a specially designated narcotics trafficker.* 31 C.F.R. § 598.205(e).

### Mr. Lopez's Designation as an SDNT

On 13 February 2017, OFAC, the agency of the Treasury Department that implements and administers the Regulations (and other sanctions regimes), designated Mr. Lopez as an SDNT under the Kingpin Act and the Regulations. This designation was announced on OFAC's website, in a Department of the Treasury press release, and in a briefing at the Department of State. Notice of Mr. Lopez's designation as an SDNT under the Kingpin Act, effective 13 February 2017, was published in the *Federal Register* on 17 February 2017. 82 Fed. Reg. 11101 (17 February 2017). Therefore, without conceding that Bahia Mar did not receive actual notice

beforehand, the effective date of the prohibitions stemming from Mr. Lopez's SDNT designation was 17 February 2017, at the latest ("**Effective Date**").

### The Blocking of Mr. Lopez's Property and Property Interests

While Mr. Lopez considers his designation as an SDNT unfounded and mistaken, until the Secretary of the Treasury rescinds that designation all property and interests in property owned or controlled by him in the U.S. will be blocked in accordance with the Kingpin Act and the Regulations. The designation of Mr. Lopez as an SDNT has therefore blocked all of his property and property interests in the U.S, including the Vessels (*see* footnote 2 above), and prohibited all transactions, dealings and transfers involving the Vessels, in accordance with the provisions of the Kingpin Act and the Regulations cited above. The prohibited transactions include Bahia Mar's *in rem* actions after the Effective Date to enforce the alleged maritime liens owing to the allegedly unpaid dockage services.

### The Deficient Complaints

Bahia Mar was evidently aware of the Kingpin Act and the Regulations when it filed its complaints because in both the complaint filed on 2 March 2017 in the First Action and the amended complaint filed on 3 March 2017 in the Second Action (the "**Complaints**"), Bahia Mar named the United States as a defendant and asserted (at paragraph 4) that the U.S. "may claim s[o]me right or interest in the M/V WAKU" and that "[s]aid right or interest is subject, subordinate and inferior to the lien of the Plaintiff." This would not, however, appear to be a sufficient disclosure of the true nature of the U.S.'s interest in the Vessels in accordance with the Kingpin Act and the Regulations, the more so when (a) Rule C(2) required Bahia Mar to verify the assertions in the Complaints and (b) Bahia Mar moved for orders for the warrants of arrest without mentioning, much less explaining, the prohibitory effect of the Kingpin Act and the Regulations.

6

In particular, Bahia Mar failed to inform the Court that there is no true issue of priority or precedence between the Kingpin Act and the Regulations, on the one hand, and the purported maritime liens alleged in the Complaints, on the other hand, because, as matters stand, the Kingpin Act and the Regulations preclude the Complaints filed by Bahia Mar after the Effective Date. Bahia Mar's remedy, in accordance with 31 C.F.R. § 598.205(e), would be to ask OFAC for a license authorizing Bahia Mar to seek to enforce its alleged liens.

In the Complaints Bahia Mar also asked the Court (in subparagraph (d) of the prayer for relief) to "determine and adjudge that the lien of the Plaintiff is superior and prior to the claims of the U.S.A. against the M/V WAKU," but that request is equally unfounded. As noted, there is no issue of priority or precedence between the Kingpin Act and the Regulations, on one hand, and the maritime lien alleged in the Complaints, on the other hand, because the Kingpin Act and the Regulations preclude the Complaints in the absence of a license issued by OFAC authorizing the Complaints.

Lest there be any doubt, on Saturday, 11 March 2017, as soon as Claimants' counsel—Mr. Richard Newcomb and Ms. Mary Gately—learned of Bahia Mar's *in rem* actions and its intent to arrest the Vessels, they informed Bahia Mar's counsel, Mr. Stuart Michelson, of the preclusive effect of the Kingpin Act and Regulations. *See* annexed Exhibit 1, Claimant counsel's (Ms. Gately's) 11 March 2017 email message, following a telephone conversation between Mr. Newcomb and Mr. Michelson, and Exhibit 2, Mr. Michelson's reply message to Ms. Gately. Ms. Gately also informed Mr. Michelson in that 11 March 2017 message that (a) counsel had applied to OFAC for a license authorizing payment of whatever dockage expenses might be owed to Bahia Mar and (b) Bahia Mar could not maintain the actions without an OFAC license authorizing them.

Bahia Mar has nonetheless persisted with the arrests of the Vessels even though those arrests are necessarily *"null and void"* in accordance with 31 C.F.R. §§ 598.205(a) and (e), quoted above, and the other cited provisions of the Kingpin Act and the Regulations.

### The Exigencies Resulting From the Arrests

In his declaration Mr. Castillo, the Yacht Manager of the Vessels, has explained the ongoing risks resulting from the arrests and the appointment of Bahia Mar as the custodian of the Vessels, including the degradation of the Vessels' major operating systems and the stores and perishables to be lost owing to the forced shut-down of the Vessels' electrical systems, all of which call for the arrests to be vacated so that Mr. Castillo can continue to provide essential administrative and logistical support to the Vessels. And Mr. Castillo's declaration underscores Bahia Mar's apparent willful indifference to the scope and prohibitory effect of the Kingpin Act and the Regulations.

In these circumstances the Court should order Bahia Mar promptly to show cause, as required by Supplemental Rule E(4)(f) and Local Admiralty Rule C(7), why the arrests of the Vessels should not be vacated forthwith and all fees and costs awarded to Claimants.[4]

Dated: 17 March 2017

Respectfully submitted,

DLA PIPER LLP (US)

By: */s/ Michael G. Austin*
    Michael G. Austin
    Florida Bar No. 0457205
    michael.austin@dlapiper.com
    200 South Biscayne Blvd.
    Suite 2500
    Miami, Florida 33131

---

[4] In accordance with Local Admiralty Rule C(7), Claimants submit a proposed Order for the relief requested in this Motion.

Tel. 305.423.8522
Fax. 305.675.6366

Richard Newcomb (*pro hac* motion forthcoming)
richard.newcomb@dlapiper.com
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, DC 20004
Tel. 202.799.4434
Fax. 202.799.5434

*Attorneys for Defendants*

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

By: */s/ Michael G. Austin*
Michael G. Austin

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by CM/ECF on March 17, 2017, on all counsel of record on the Service List Below.

By: */s/ Michael G. Austin*
Michael G. Austin

**SERVICE LIST**

Stuart R. Michaelson
smichelson@smichelsonlaw.com
The Law Office of Stuart R. Michelson
800 SE 3rd Avenue, 4th Floor
Ft. Lauderdale, FL 33316
Tel.: 954-463-6100
Fax: 954-463-5599

*Attorney for Plaintiff*

EXHIBIT 1

**From:** Gately, Mary [mailto:mary.gately@dlapiper.com]
**Sent:** Saturday, March 11, 2017 12:13 AM
**To:** Stuart R. Michelson (smichelson@smichelsonlaw.com)
**Cc:** Newcomb, Richard; Karavetsos, George
**Subject:** Warrant for Arrest In Rem of M/V "WAKU" issued in Rahn Bahia Mar LLC d/b/a Bahia Mar Yachting Center vs. M/V "WAKU," 17-60449-CIV-MARTINEZ-GOODMAN, United States District Court for the Southern District of Florida, Fort Lauderdale

Mr. Michelson:
As you were or should have been aware, on February 13, 2017, the M/V "WAKU" became blocked property under the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. 1901-1907, and the Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. part 598 (the "FNKSR"). In a telephone conversation with you yesterday afternoon (March 9), Mr. Richard Newcomb, one of my partners in the Washington, DC office of DLA Piper LLP (US), explained that, unless licensed by the Department of the Treasury's Office of Foreign Assets Control ("OFAC"), any transaction or dealing in blocked property is prohibited under the Treasury regulations (see FNKSR § 598.203(a)). This includes the execution of any lien or other judicial process, such as the Warrant for Arrest In Rem or an Order Appointing Substitute Custodian of Vessel issued at the request of your client, against the M/V "WAKU," which is blocked property. Such orders are ineffective unless licensed or authorized by OFAC (see FNKSR § 598.205(e)). Mr. Newcomb also notified you that, on behalf of our client, Mr. Samark Lopez, we are seeking a license from OFAC to allow Mr. Lopez to send funds from unblocked sources to pay any past due amounts that are owed to your client, Bahia Mar, and to pay the expenses incurred by the M/V "WAKU" on a monthly basis going forward.

We have learned that you filed an in rem suit against the M/V "WAKU" on March 2, 2017, seeking the arrest and sale of this blocked, multi-million-dollar vessel to satisfy Bahia Mar's lien claim in the principal amount of approximately $13,000, without serving the complaint on the agent for the M/V "WAKU" or its counsel. Without knowing these details when he spoke to you yesterday and today, Mr. Newcomb had also asked you, both in his telephone conversation with you yesterday and in a further call today, to send him a copy of the complaint.

Despite the explanation you received related to OFAC from Mr. Newcomb yesterday afternoon, you proceeded, on an ex parte basis without service of process on the agent for the M/V "WAKU" or its counsel, to cause Judge Martinez to issue an Order directing the Clerk of the Court to issue a Warrant for Arrest In Rem of the M/V "WAKU," i.e., an order directing the United States Marshal for the U.S. District Court for the Southern District of Florida to seize the vessel and detain it in his/her custody. You also caused Judge Martinez to issue a further Order yesterday (March 9), appointing your client as Substitute Custodian of M/V "WAKU," a blocked vessel. On information and belief, the Clerk issued the Warrant for Arrest In Rem, and that Warrant is to be executed by the United States Marshal at 8:30 tomorrow morning (March 10).

Please be aware that your client should cease any attempt to take custody of the M/V WAKU until it has received a license from OFAC to do so. If, your client insists on this course of action, this is notice that we will hold your client personally liable for any damage to the vessel and for all costs incurred by our client in regaining custody of the vessel. We request that you contact Mr. Newcomb or me at your earliest convenience.
Best, Mary Gately and Rick Newcomb

**Mary Gately**
Partner

T +1 202 799 4507
F +1 202 799 5507
M +1 703 772 0191
E mary.gately@dlapiper.com

# EXHIBIT 2

**From:** Stuart R. Michelson (smichelson@smichelsonlaw.com) [mailto:smichelson@smichelsonlaw.com]
**Sent:** Saturday, March 11, 2017 3:31 PM
**To:** Gately, Mary
**Cc:** Newcomb, Richard; Karavetsos, George
**Subject:** RE: Warrants for Arrest In Rem of M/V "WAKU" 17-civ-60447 and 17-civ-60449

Ms. Gately,

Your email is offensive, particularly in light of my several conversations with your firm this past Thursday and Friday, including one with you on Thursday. I made it clear that the complaints had been filed against each Waku vessel and that arrests of same by the U.S. Marshal were imminent. I recall the response I received from Mr. Newcomb, which included his thanking me for my "accommodating" phone call. You were on the line when he said that.

In any event, you obviously have no familiarity with maritime law, nor with certain provisions of the United States Constitution.

As for your offer to contact Mr. Newcomb or you at my earliest convenience, based upon our dealings to date, I will pass. If Mr. Newcomb or you wish to communicate with me, you may do so in writing.

Your offensive email notwithstanding, my client at all times has and shall continue to abide by the applicable law.

Sincerely,

Stuart R. Michelson
Law Office of Stuart R. Michelson
200 Southeast Third Avenue – Fourth Floor
Fort Lauderdale, FL 33316
Telephone              954-463-6100
Dade                   305-861-1000
Facsimile              954-463-5590
Toll Free Telephone    866-563-6100
Toll Free Facsimile    866-563-5599
http://www.smichelsonlaw.com